Billy Wayne JOHNSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2001–SC–0951–MR.

Supreme Court of Kentucky.

May 20, 2004.

Richard Hoffman, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Todd D. Ferguson, Michael Harned, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, for appellee.

JOHNSTONE, Justice.

Appellant, Billy Wayne Johnson, was convicted of one count of manufacturing methamphetamine; one count of possession of a controlled substance, methamphetamine; one count of possession of drug paraphernalia; and one count of possession of marijuana. He was sentenced to twenty years' imprisonment on the manufacturing charge, five years' imprisonment on the methamphetamine possession charge, twelve months' imprisonment and a $500 fine on the drug paraphernalia charge, and a $500 fine on the marijuana possession charge. All the terms of years were ordered to run concurrently, for a total of twenty years' imprisonment. Johnson appeals to this Court as a matter of right. He raises a number of issues on appeal, including whether an incriminating letter was properly authenticated, whether the trial court erred in sending the letter with the jury to review during its deliberations, and whether the instruction on manufacturing methamphetamine violated his right to a unanimous verdict. Because we conclude that Johnson's conviction for both possession of methamphetamine and manufacturing methamphetamine violate his constitutional rights, we reverse his conviction and sentence for possession of controlled substance, methamphetamine. Concluding there was no other error, we affirm his conviction and sentence for manufacturing methamphetamine, possession of drug paraphernalia, and possession of marijuana.

### Discussion

### I. Authentication of the Letter

■ Sometime prior to trial, the Commonwealth came into possession of a letter allegedly written and signed by Johnson. The letter was addressed to a Scott Jimenez, who was a friend of Johnson. The return address on the envelope was from a James Salley. The letter was turned over to the Commonwealth by a Tara Stallins, who was a former friend of Johnson and a witness for the Commonwealth. But the Commonwealth introduced the letter through Jimenez. The letter states:

Hey Dog,

What's going on with you? I'm glad to hear you back with family better. Well, I go to trial in nine days on 17th and 18th. I guess all my so-called friends are going to put me away for awhile. They offered me fourteen years opposed to probation. They didn't—they don't have any evidence besides my friends talking. If you see Mary, tell her if she going to say she was buying dope, that it was, that is was not from me. They are going to have to prove that I knew or was selling dope out of my house to take it. In my discovery, there is one part where she was talking to a CI and saying she was getting dope from me. She needs to say Tara was her connection and Tara said she got the shit from me. You know, if I had not met Tara, I probably would not be in half this much trouble. If everybody would get shit together, then maybe I would be able to keep my house. I guess I haven't got long to wait until I find out something. Tara has got to the prosecution thinking I am a kingpin and dangerous. She told them I locked her up for three days in my attic. You know you cannot even lock my attic. If everybody would just let the jury know what kind of a person I am really, it would help. Well, enough of me. Ernie is in my cell now. He told me to say hi to you. I wish you could beam me out of here Scotty. I've been in here for several months now. I guess if they find me guilty I will lose everything. It was hard to stop that shit when you were having so much fun. You know, I never really fucked up,

everybody used me as a scapegoat. They never found anything on me. Oh well, get you a job and get your shit together, but I guess I can forget that. Take care of yourself and tell everybody hi for me. Maybe I see you at my trial. Write back, dog. Your friend, Bill W. Johnson, Sr. Tell Christie hi. Tell her I want to see them tits. Ha, ha.

(Then at the top of the back page is a note in different handwriting that says: "Write me a damn letter too, Ernie.")

Jimenez did not authenticate the letter as being written by Johnson. He could not identify the signature as being Johnson's, because he claimed that he had never seen Johnson's signature before. Nor did he verify that the contents of the letter contained information that uniquely identified Johnson as the author. Nonetheless, the trial court found that several statements in the letter sufficiently identified Johnson as the author such that the Commonwealth had met its burden in authenticating the letter. On appeal, Johnson argues that this ruling was erroneous. We disagree.

■■■■■ KRE 901(a) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This rule "treats preliminary questions of authentication and identification as matters of conditional relevance according to the standards of [FRE] 104(b). The condition of fact which must be fulfilled by every

offer of real proof is whether the evidence is what its proponent claims." *United States v. Reilly*, 33 F.3d 1396, 1404 (3rd Cir.1994) (interpreting FRE 901(a) and FRE 104(b)—which are worded identically to KRE 901(a) and KRE 104(b)—and quoting 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 901(a)[01] at 901–15 (1993)) (internal quotation marks omitted). The proponent's burden of authentication is slight, which requires only a prima facie showing of authenticity to the trial court. *Id.* at 1404. On appellate review, the trial court's finding of authentication is reviewed for abuse of discretion. *See United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir.1997), *cert. denied*, 521 U.S. 1127, 117 S.Ct. 2527, 138 L.Ed.2d 1027 (1997) (addressing the authentication, under FRE 901, of a card purported to have been written by the defendant).

KRE 901(b) illustrates examples of appropriate methods of authentication or identification. Of particular relevance here is KRE 901(b)(4), which states: "Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Under this illustration, the letter in question could be authenticated by examining passages of the letter that uniquely identified Johnson as the author.

In finding that the letter had been properly authenticated, the trial court found the following sufficiently identified Johnson as the author of the letter.

| Letter | Corresponding Facts |
|---|---|
| The letter states, "Well I go to trial in nine days on the 17th and 18th." | Johnson's trial was set to begin on September 18, 2001 |
| On the top of the back page, in a different handwriting, the letter states, "Write me a damn letter too, Ernie." | Ernie was a friend of Jimenez and was in jail with Johnson at the time the letter was written |
| The letter states, "Tara has got [ ] the prosecution thinking I am a kingpin and dangerous." | Tara Stallins was a key prosecution witness at Johnson's trial. |
| The letter states, "Tell Christie hi." | Christie was Jimenez's friend. |

Upon the above identifying facts, we hold that the trial court did not abuse its discretion in finding that the letter had been properly authenticated under KRE 901.

## II. The Letter in Deliberations

■ After finding the letter to be sufficiently authenticated, the trial court allowed the Commonwealth's Attorney to read the letter in its entirety to the jury during trial. Additionally, the trial court sent the letter with the jury during its deliberations. On appeal, Johnson argues that sending the letter with the jury was reversible error. We disagree.

The relevant facts of this case are remarkably similar to those of *Taylor v. Commonwealth*, 28 Ky. L. Rptr. 1348, 92 S.W. 292 (1906). In *Taylor*, the appellant was convicted of forging another person's name to a promissory note. *Id.* at 293. During trial and over the defendant's objection, the trial judge admitted a letter into evidence. Thereafter, the Commonwealth read the letter written by the appellant to a third party in which the appellant admitted the forgery. *Id.* Again, over the appellant's objection, the trial court sent the letter with the jury to review during its deliberations. *Id.* On appeal, the *Taylor* Court held that Section 248 of the Criminal Code of Practice invested the trial court with the sound discretion to send the letter with the jury and there was no abuse of discretion under the facts of the case. *Id.* at 294.

The criminal rule relied on by the *Taylor* Court is almost identical to the first sentence of RCr 9.72 which states, "Upon retiring for deliberation the jury may take all papers and other things received as evidence in the case." Like the rule relied

upon by the *Taylor* Court, RCr 9.72 gave the trial court the discretion to send the letter with the jury during its deliberation. We find no abuse of discretion in doing so. Hence, we hold that there was no error.

## III. Unanimous Verdict

■ As it is currently written, manufacturing methamphetamine can be proven in two different ways under KRS 218A.1432 (1), which provides:

(1) A person is guilty of manufacturing methamphetamine when he knowingly and unlawfully:

(a) Manufactures methamphetamine; or

(b) Possesses the chemicals or equipment for the manufacture of methamphetamine with the intent to manufacture methamphetamine.

The trial court instructed on both methods in its instruction on manufacturing methamphetamine:

You will find the Defendant ... guilty of manufacturing methamphetamine under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in Christian County on or about August 3, 2000 and before the finding of the Indictment herein[,] he manufactured methamphetamine[;] OR

B. He possessed the chemicals or equipment for the manufacture of methamphetamine with the intent to manufacture it.

On appeal, Johnson argues that the instructions given in this case violated his right to a unanimous verdict because there was insufficient evidence to support his conviction under Part B of the instruction above, and, therefore, he was denied his

right under the Kentucky Constitution to a unanimous verdict. We disagree.

We begin by noting that there was sufficient evidence to convict Johnson of actually manufacturing methamphetamine under Part A of the above instruction. This evidence consisted of five glass jars containing a solid residue of methamphetamine, a glass jar containing methamphetamine oil, and testimony from a number of witnesses that either put Johnson in possession of some of the chemicals and equipment necessary to manufacture methamphetamine or explained how he obtained possession of these items.

On appeal, Johnson argues that the Commonwealth failed to introduce evidence that Johnson had possession of either all of the chemicals or all of the equipment used to manufacture methamphetamine with the intent of manufacturing it. Thus, Johnson argues that there was insufficient evidence to convict him of manufacturing methamphetamine under KRS 218A.1432(1)(b), *see Kotila v. Commonwealth*, Ky., 114 S.W.3d 226, 240–41 (2003), and, therefore, he was denied his right to a unanimous verdict. *See, e.g., Burnett v. Commonwealth*, Ky., 31 S.W.3d 878, 884 (2000). (When a juror is presented, in a single instruction, alternate theories of guilt for the same offense, "each juror's verdict [must] be based on a theory of guilt in which the Commonwealth has proven each and every element beyond a reasonable doubt.") But Johnson ignores the fact that there was sufficient evidence to support his conviction for actually manufacturing methamphetamine. under Part A of the manufacturing instruction.

A necessary inference from proof of actual manufacture is that, at some point in time, he must have had possession of both all the equipment and all the ingredients necessary to manufacture methamphetamine. In other words, just as you can't make an omelet without breaking some eggs, you can't make methamphetamine without having possession of the necessary chemicals and equipment. Nor, as demonstrated in the next section, is it likely that someone would inadvertently combine the chemicals and use the equipment to manufacture methamphetamine by accident. Thus, intent to manufacture can be inferred from the act of manufacturing as well. Therefore, we hold that there was sufficient evidence to convict Johnson under both versions of the manufacturing instruction. There was no error. *Wells v. Commonwealth*, Ky., 561 S.W.2d 85, 88 (1978).

## IV. Double Jeopardy

■ Johnson next argues that his conviction for both possession of methamphetamine and manufacturing methamphetamine violates the Fifth Amendment right that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." We agree.

In *Beaty v. Commonwealth*, Ky., 125 S.W.3d 196, 210 (2003), we applied the *Blockburger*[1] test to determine whether KRS 218A.1432(1)(a) and KRS 218A.1415(1) (possession of methamphetamine) each require proof of an element that the other does not. We concluded that the answer turned on whether the defendant was convicted for possessing the same methamphetamine he was convicted of manufacturing. *Id.* at 213. Because actual manufacture necessarily included a certain period of actual possession of the manufactured methamphetamine, we held that it was unconstitutional to convict a

---

**1.** *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which provides the test for determining whether multiple prosecutions for the same course of conduct violates the Double Jeopardy Clause of the Fifth Amendment.

defendant of possessing the same methamphetamine that he or she was convicted of actually manufacturing. *Id.* A close examination of the record reveals that is exactly what occurred here. Therefore, we reverse Johnson's conviction for possession of methamphetamine.

At trial, the Commonwealth's expert testified that there are several ways to manufacture methamphetamine, but only testified as to one of these, which he referred to as the anhydrous, lithium-metal reduction method. In detailing the manufacture of methamphetamine using this method, he explained how glass jars, such as those found at Johnson's house, are used.

The expert explained that over-the-counter cold medicines containing ephedrine or pseudoephedrine are first placed in the jar and then a solvent such as lantern fuel or alcohol is added to the cold medicine to remove the binding agents. This mixture is allowed to evaporate and what remains is the ephedrine, a necessary ingredient in making methamphetamine under the described method of manufacture. The next step is to combine, in the jar, a reactive metal, such as lithium stripped from AA batteries, and anhydrous ammonia with the ephedrine. When this mixture evaporates or dissipates, what is left is methamphetamine oil, which is not absorbable by the human body. To make it absorbable, it must be turned into a water based substance, which is also typically done in glass jars.

Ether is added to and mixed with the methamphetamine oil to cause further separation and to purify the oil. The oil is then extracted from the mixture. This oil is put in a glass jar and ether is again added. Hydrogen sulfide or hydrogen chloride is bubbled through the methamphetamine. This is the final process that turns the oil into a water base, which is absorbable by the human body. The finished methamphetamine is obtained by filtering the mixture in the glass jar through coffee filters or the like. The jar in which the methamphetamine was "cooked" is commonly called a "seed jar," which is kept and through which the bubbling step is often repeated in order to obtain more methamphetamine.

The five jars with the methamphetamine residue introduced against Johnson were "seed jars." The jars were evidence of Johnson having completed the final process of manufacturing methamphetamine. And it was much stronger evidence that he manufactured methamphetamine than if he were found in possession of methamphetamine that had been filtered and packaged for sale, storage, or distribution. The same is true for the methamphetamine oil. The Commonwealth's evidence did not put Johnson in possession of any other quantity of methamphetamine other than that found in the glass jars. Thus, we conclude that Johnson was convicted of possessing the same methamphetamine that he was convicted of manufacturing and, therefore, reverse his conviction for violating possession of methamphetamine.

**V. Facilitation**

■ Johnson argues that the trial court erred in failing to instruct the jury on facilitation to manufacture methamphetamine. KRS 506.080. The basis of this argument is that there was evidence that Johnson did not manufacture any methamphetamine, but merely allowed others to use his house and property to manufacture it. But there was no evidence that anyone else manufactured methamphetamine in Johnson's house or on his property. Rather, there was only proof that other persons knew how to manufacture it, which is not the same thing. Further, there was no evidence that anyone other than Johnson had possession of or ob-

tained the chemicals used to manufacture methamphetamine. This includes Johnson's own testimony, in which he professed complete ignorance as to how the glass jars of methamphetamine came to be in his house, but never testified that he knew or was aware that others were manufacturing methamphetamine in his house. Without knowledge that another is committing a crime, there can be no facilitation under KRS 506.080. *Caudill v. Commonwealth*, Ky., 120 S.W.3d 635, 670 (2003). Thus, there was no evidence to support the instruction and, consequently, there was no error in refusing to give it. *See Thompkins v. Commonwealth*, Ky., 54 S.W.3d 147, 150 (2001).

### VI. Other Errors

Johnson also argues (1) that the trial court erred in allowing the Commonwealth to amend the indictment to include the charge that he was guilty of manufacturing methamphetamine under KRS 218A.1432(1)(b), which makes it illegal to possess the chemicals and equipment used to manufacture methamphetamine with the intent to manufacture methamphetamine; and (2) that KRS 218A.1432(1)(b) is void for vagueness. We have reviewed these claims and find them without merit or worthy of further discussion.

### *Conclusion*

For the reasons set forth above, we affirm Johnson's conviction and sentence for manufacturing methamphetamine, possession of drug paraphernalia, and possession of marijuana. Further, we reverse Johnson's conviction and sentence for possession of a controlled substance, methamphetamine, and remand this case to the Christian Circuit Court with directions to vacate Johnson's conviction and sentence for possession of a controlled substance, methamphetamine.

LAMBERT, C.J., COOPER, GRAVES, KELLER, and STUMBO, JJ., concur

WINTERSHEIMER, J., concurs in result only.