RENDERED: JUNE 17, 2010
TO BE PUBLISHED

## Supreme Court of Kentucky

### 2008-SC-000809-DG

**FINAL**

**DATE** 7-8-10 *C. Hicks*

IMA RUTH THRASHER, INDIVIDUALLY,
AND AS EXECUTRIX OF THE
ESTATES OF HOWARD THRASHER;
AND BARRY DOUGLAS THRASHER

APPELLANTS

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2007-CA-000797-MR
CLINTON CIRCUIT COURT NO. 93-CI-00160

TILMOND DURHAM, TERRILL DURHAM,
AND WALTER POWELL, III,
D/B/A DP ENTERPRISES

APPELLEES

## OPINION OF THE COURT BY JUSTICE ABRAMSON

### AFFIRMING

Ima Ruth Thrasher, both individually and as the executrix of the estate of Howard Thrasher, and Barry Douglas Thrasher appeal from an Opinion of the Court of Appeals affirming the dismissal of the Thrashers' negligence action against Tilmond Durham, Terrill Durham, and Walter Powell, III, d/b/a DP Enterprises. DP Enterprises operates oil wells in Clinton County. The Thrashers, who own and live on property near Bug, Kentucky in the vicinity of some of the wells, alleged that DP Enterprises negligently permitted hydrogen sulfide gas to escape from one or more of the neighboring wells and that the gas damaged their property and caused them personal injury. A 2007 trial in

the Clinton Circuit Court resulted in a jury verdict adverse to the Thrashers and a subsequent judgment dismissing their claims. The Thrashers contend that the trial court erred when it would not allow them to introduce into evidence three documents, which they sought to use to impeach a portion of the testimony of Tilmond Durham. Agreeing with the Court of Appeals that the trial court's ruling was not an abuse of discretion, we affirm.

## **RELEVANT FACTS**

The Thrashers offered testimony to the effect that smoke and fumes from DP Enterprises' wells invaded their property at various times, including in particular the late fall of 1992. One of the nearest wells, apparently, was a well named Steve Jones #1. Tilmond Durham testified for the defense that in September 1992 a neighboring well operator "fractured" one of its wells—that is, according to Durham, introduced acid into the well to clear obstructions—and did so in a manner that disrupted Steve Jones #1. Durham testified that as a result of the disruption Steve Jones #1 temporarily ceased producing and was shut down, and so could not have been releasing hydrogen sulfide, from mid-September 1992 until late December of that year or early January 1993. Durham also indicated that the disruption to Steve Jones #1 gave rise to litigation in the United States District Court for the Western District of Kentucky. Apparently, the attorney who represented DP Enterprises in the federal action was also listed as one of the business's attorneys in this case. In fact, however, that attorney had virtually nothing to do with this case, and DP

Enterprises was represented by an attorney who was not involved in the federal case.

At some point the Thrashers sought discovery of production data and records concerning the wells at issue, including Steve Jones #1, from the file of the attorney who had handled the federal litigation. In complying with the request, current defense counsel noted that the documents he was supplying were not his and that he did not know how or by whom they were generated. Among those documents were the three at issue here. One of them is a graph headed "DP Enterprises, Steve Jones #1 Unit." It purports to show "5-Day Production Amounts" from early August 1992 until late December 1992. The graph suggests that production ceased from about September 23 until about October 14, when it resumed and continued until close to the end of the year. The other two documents purport to itemize, respectively, the production of Steve Jones #1 before and after "Fracture of Lawrence Cross #1." The "after fracture" itemization indicates that in October, November, and December 1992, Steve Jones #1 continued to produce, although at a drastically reduced rate. The documents are all headed "Steve Jones #1," but none of them indicates an author. The Thrashers sought to introduce this evidence of continued, *albeit* reduced, production to counter Durham's testimony that Steve Jones #1 could not have been releasing noxious fumes in the fall of 1992 because it had been shut down.

DP Enterprises objected to introduction of the three documents on the ground that they had not been authenticated, as is required by KRE 901. The

trial court then excused the jury and convened an evidentiary hearing to give the Thrashers an opportunity to provide authentication. They called Tilmond Durham as a witness and asked him if he recognized the three documents. He testified that he had never seen any of them before and did not know who made them. The Thrashers did not otherwise pursue the issue at that point, so the trial court sustained the defense objection and did not allow the Thrashers to introduce the documents during their cross-examination of Durham. Later in the trial, the Thrashers renewed their request to introduce the documents and argued that the documents were "self-authenticating" because they had been provided in discovery and the providing party should not be allowed to disavow its own representations. Defense counsel noted that these documents had expressly been provided without any representations and that the onus was thus on the Thrashers to authenticate them. Despite over two years between the production of the documents and the trial, the Thrashers had taken no steps to authenticate the documents. The trial court agreed with the defense that the documents were not self-authenticating, whereupon the Thrashers introduced the three documents by avowal.

On appeal, the Thrashers renew their argument that the production of a document in discovery authenticates it, and contend that the trial court erred by ruling otherwise. Although we agree with the Thrashers that in some circumstances the act of producing a document or other discoverable matter will impliedly authenticate what is produced, we do not agree that the implication arises from the mere act of production.

## ANALYSIS

### Production of a Writing or Other Item in Discovery Can, But Need Not, Imply That the Item is Authentic.

As the Thrashers correctly note, the United States Supreme Court has held, in the context of the Fifth-Amendment guarantee against compelled self-incrimination, that the very act of responding to a subpoena can itself amount to incriminating admissions: "'Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [target of the subpoena]. It also would indicate the [target's] belief that the papers are those described in the subpoena.'" *United States v. Doe,* 465 U.S. 605, 613 (1984) (*quoting Fisher v. United States,* 425 U.S. 391, 410 (1976)). If the target is in fact someone capable of authenticating the papers, then his or her belief that they are what the subpoena has described can be said to authenticate the papers implicitly. The implication need not arise, however, if the target would not be able to authenticate the papers by testifying. *See, Fisher, supra* (because subpoenaed taxpayer could not authenticate accountant's report, his surrender of that report did not amount to an implied admission concerning it).

Other courts have applied this notion of implied authentication in the context of civil discovery, sometimes stating the rule quite broadly. *See, e.g., South Central Bank and Trust Company v. Citicorp Credit Services, Inc.,* 863 F. Supp. 635, 645 (N.D. Ill. 1994) ("[P]roduction of a document amounts to an implicit authentication of the document.") (*citing United States v. Brown,* 688

5

F.2d 1112 (7ᵗʰ Cir. 1982)); *In re Greenwood Air Crash,* 924 F. Supp. 1511, 1514 (S.D. Ind. 1995). ("Production of a document by a party constitutes an implicit authentication of that document.") (also *citing Brown*). In most of these cases, however, the person producing the document is competent to authenticate it—a private individual producing his own papers, say, or a business's records custodian producing the business's documents—and in those cases production can indeed be said to imply the document's authenticity. As illustrated by *Fisher,* however, parties may have in their possession or control documents from other sources and even documents of unknown origin, which they would not be competent to authenticate directly. It is hard to see in those circumstances how the mere production of the document—in response, say, to a very broad request for "everything in your possession or control having to do with X"—implies anything about the extraneous document's authenticity.

That very scenario confronted us in *Bratcher v. Commonwealth,* 151 S.W.3d 332 (Ky. 2004). In that case, the Commonwealth produced cell phone records, one of which included an extraneous hand-written notation indicating the location where the call originated. The Commonwealth did not know the source of the notation. The defendant, however, sought to introduce the notated record to prove the location from which the phone call originated. When he was unable to authenticate the notation, he argued that it should be deemed authenticated because the opposing party had produced it in discovery. Rejecting that argument, this Court held that "[t]he mere fact that

the notation was present in the discovery is not a sufficient authentication or identification so as to make the evidence admissible." *Id.* at 354.

We adhere to that holding today. Under KRE 901, a document must be authenticated before it can be admitted into evidence. While the proponent's burden is slight, it is nonetheless real and requires a showing "sufficient to support a finding that the matter in question is what the proponent claims." KRE 901(a); *Johnson v. Commonwealth,* 134 S.W.3d 563 (Ky. 2004). This burden may be met in any number of ways, including circumstantial evidence permitting an inference that the document is what it is represented to be. *Id.* As discussed above, the fact that the document was produced in discovery may give rise to an inference of authenticity where production was made by someone competent to provide authentication, but the mere fact of production does not suffice where that competence is lacking. Finally, we note that we review a trial court's authenticity rulings for abuse of discretion. *Id.*

Here, the provenance of the documents the Thrashers sought to introduce is a matter of pure speculation. The maker is not identified on the face of any of the three documents, Tilmond Durham did not recognize them, and they were provided not from a known source, but from a former attorney's file without any indication of how or where the former attorney obtained them. In these circumstances, we cannot say that the trial court abused its discretion when it ruled that the documents had not been properly authenticated and, in particular, that they had not been implicitly authenticated by being supplied in discovery.

## CONCLUSION

In sum, although we agree with the Thrashers that discovery production can, in certain circumstances, implicitly authenticate the matter produced, production alone of a document does not suffice in all circumstances. The trial court was clearly within its discretion by ruling that it did not suffice here. Accordingly, we affirm the Opinion of the Court of Appeals which affirmed the judgment of the Clinton Circuit Court.

Minton, C.J.; Cunningham, Noble, Schroder, and Venters, JJ., concur. Scott, J., concurs in result only.


COUNSEL FOR APPELLANTS:

Robert E. Reeves
167 West Main Street
Suite 1310
Lexington, KY 40507


COUNSEL FOR APPELLEES:

Robert S. Walker, III
Frost Brown Todd, LLC
250 West Main Street
Suite 2800
Lexington, KY 40507