RENDERED: APRIL 26, 2018
TO BE PUBLISHED

Supreme Court of Kentucky

2016-SC-000234-MR

EUGENE BAKER        APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BRIAN C. EDWARDS, JUDGE
NO. 12-CR-003691-001

V.

COMMONWEALTH OF KENTUCKY        APPELLEE

**OPINION OF THE COURT BY JUSTICE WRIGHT**

**AFFIRMING IN PART AND REVERSING AND VACATING IN PART**

Appellant, Eugene Baker, was convicted by a Jefferson Circuit Court jury of murder, first-degree robbery, tampering with physical evidence, and possession of a handgun by a convicted felon. For these crimes, the jury recommended sentences of thirty years' imprisonment for murder and ten years' imprisonment for robbery, to be run consecutively. The jury also recommended a one-year sentence on the tampering with physical evidence conviction and a five-year sentence for the possession of a handgun by a convicted felon conviction, to be served concurrently with the murder and robbery sentences. The trial court sentenced Baker to forty years' imprisonment in accordance with the jury's recommendation. Appellant now appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), and asserts five grounds for reversal of his convictions: (1) the trial court abused its discretion when it did not allow defense counsel to argue in closing that the

Commonwealth did not produce any evidence of motive; (2) the trial court abused its discretion when it allowed the Commonwealth to introduce unauthenticated call logs, and when it allowed the Commonwealth to recall a witness to testify as to a phone number appearing in the call logs; (3) the trial court erred in failing to grant a directed verdict on the tampering with physical evidence and possession of a handgun by a convicted felon charges; (4) the trial court erred in refusing to instruct on facilitation to murder and first-degree robbery; and (5) Baker is entitled to reversal of his conviction and a new trial due to cumulative error. We will address each claimed error in turn.

## I. BACKGROUND

In 2012, Baker and co-defendant Duzuan Lester were indicted as complicitors in the 2007 murder and robbery of Dominic Hudson. Baker and Lester's trial ended with Lester acquitted of all charges and with the jury unable to agree upon a verdict as to Baker. This appeal concerns Baker's retrial.

On retrial, several witnesses testified regarding events surrounding the crime at issue herein. We will outline their testimony in order to give a full picture of the evening of Hudson's murder. Witnesses testified that Hudson sold both marijuana and "bootlegged" DVDs. Hudson kept two cell phones— one for personal use, and the other for "business."

Kristie Hart testified she was in Hudson's apartment on the evening of his murder. She said two men came to the apartment and she opened the door for them, as she was expecting her cousin Teresa to stop by. Hart did not

2

know the men, but said one of them wore a red baseball cap with a flat bill. Teresa eventually arrived at Hudson's apartment, and she and Hart left around 7:00. The two men Hart did not know remained in the apartment with Hudson. Hart later picked Baker's picture out of a photographic line-up as being one of the men who was in Hudson's apartment on the night in question.

Two other witnesses, Yvonne Wolf and Alvin Servin (who happened to be neighbors) testified that they were each going to Hudson's apartment on the evening of his murder and did not know the other would be there. Wolf was there to pick up DVDs Hudson had made her, and talked to Hudson to let him know she was on her way. She could hear people in the background during the phone call, and Hudson told her he had to take care of something. She arrived at Hudson's apartment seven minutes later, and ran into Servin in the parking lot (he testified he was going to the apartment to buy marijuana from Hudson). The two approached the apartment together and knocked, but Hudson did not answer the door. They noticed the door was ajar, and Wolf knew Hudson typically kept his door locked. The two called out, but got no response. They walked in the door, rounded a corner, and saw Hudson's lifeless body lying in the hallway. They testified "weed" was everywhere. An autopsy would later determine Hudson died as the result of a gunshot wound to the back of his head.

Charles Evans, Jr., who lived in the same apartment complex as Hudson, also testified at trial. He said on the night of Hudson's murder, just before 7:00, he saw two men running out the complex. One of the men held a t-shirt,

3

which he appeared to be using to conceal something. While the description Evans provided matched Baker's description, he neither identified Baker nor saw a handgun.

Jasmine Williams testified she was dating Baker at the time of Hudson's murder. She said she knew Hudson, but had never called him; she stated it was possible Baker had used her phone to call Hudson. It turned out her number had called Hudson about an hour before his death. Williams testified that Lester and his girlfriend picked her up on the evening in question, along with her baby and Baker. They traveled to Hudson's apartment, where Baker said he needed to go to get his cell phone. Williams testified that when Baker and Lester returned to the car, they were running down the street, dropping money and marijuana as they ran. Williams testified the two men were very upset when they returned to the car and said, "Go, go, go!" when they re-entered the vehicle. They drove to Baker's cousin Ebony's house, where Lester and his girlfriend dropped off Baker, Williams, and her baby. Baker was throwing up and visibly shaken when they arrived at Ebony's house.

Williams testified that when she asked Baker what was wrong, he told her he had killed Hudson by shooting him in the back of the head. Baker said he was in the kitchen when he shot Hudson (and this is, in fact, where Hudson's body was found). Williams did not see the gun, but thought Baker's cousin Gary had come the next day and gotten the weapon.

Williams was friends with Nikkia Sullivan, who had a relationship with Hudson. Williams told Sullivan what had happened with Hudson and the two

4

stopped talking after Williams's revelation. Williams became upset with Sullivan when Sullivan told police what Williams told her regarding Hudson and asked Williams to help her "cop a deal."

Williams was a convicted felon, but testified she did not receive any deals in exchange for her testimony.

Sullivan was serving a sentence for manslaughter and aggravated robbery at the time of Hudson's trial—and was almost eight years into her sentence. Sullivan testified she used to hang out with Baker, Williams, and Hudson. Hudson may have been the father of Sullivan's daughter, though paternity was never established. Sullivan was not aware of any animosity between Hudson and Baker, and had never met Lester.

Sullivan was supposed to go to the fair with Hudson on the night of his murder. Hudson told her he had some things to do. At some point that evening, Hudson stopped answering her phone calls. Sullivan called Williams, because she thought Baker may know where Hudson was. She could not recall at trial if anyone answered her call. However, in a 2012 statement to police, Sullivan said Williams did answer her call. When she asked where Hudson was, Sullivan said Baker got on the phone and told her she was not going to see Hudson again. The next time Sullivan called Williams, she said Baker answered the phone, told her he had killed Hudson, and hung up. Sullivan did not initially call the police to report this information.

In early 2008, Sullivan said she did call Crime Stoppers after speaking with Williams. Williams had sent Sullivan a message saying she wanted to talk

about Hudson. Sullivan testified Williams told her she had been driving the get-away car on the night of Hudson's murder. She said Baker and another male were passengers. Sullivan testified that Williams told her she heard gunshots, and the man with Baker jumped back in the car and vomited. When Baker made it back to the car, he looked like a ghost. Sullivan testified Williams told her she and the two men then drove to Williams's apartment.[1] Sullivan was unable to identify Baker from a photo pack five years after Hudson's murder. She said she could not remember what Baker looked like.

Another witness, Susan Copass-Cheng had a child with Baker. Baker called Copass-Cheng and asked her to bring their daughter to see him. She testified he told her he had done something and if anyone ever found out, he may not be able to see her or their child again. Copass-Cheng testified she did not know Williams, but had spoken with her on the phone. She testified that Williams had called her only once, but that Baker called her from Williams's phone numerous times. On recall, Copass-Cheng identified Williams's number (the same number which appeared in call logs as having called Hudson approximately an hour before his death) as the number from which Baker called her.

Marquez Turner also testified at trial. He said he and Baker were friends and had bought marijuana from Hudson. Turner said he was supposed to

---

[1] Sullivan's testimony differs from Williams's. As noted, Williams testified that Lester's girlfriend drove the car and that she dropped Williams, her baby, and Baker off at Ebony's house.

6

meet Hudson on the night of his murder to pay him some money. When Turner went to Hudson's apartment that night, police were there and he did not approach the apartment. However, Turner spoke with police in 2009 and 2012 and told police, in taped statements, that Baker had confessed to killing Hudson. However, at trial, Turner claimed he lied to police and that these statements were untrue.

A red baseball cap was found lying in the kitchen floor, just two feet away from Hudson's body. DNA found on the cap matched both Baker and Lester. Lead Detective Keith Roberts testified marijuana was on Hudson's body, the floor, and the counter. He also testified money was found in Hudson's back pocket. Detective Roberts interviewed Baker in 2007. Baker admitted he knew Hudson and had bought marijuana from him. Baker said he did not know what the detective was talking about when Detective Roberts asked Baker if he had anything to do with Hudson's murder.

At trial, Baker called two witnesses: Ebony, at whose house Williams testified they went on the night of Hudson's murder, and his former co-defendant, Lester. Ebony denied knowing Williams and denied Williams and Baker had come to her house on the night of Hudson's murder. Lester testified that he and Baker were friends. He denied ever having been to Hudson's apartment complex and denied being present during Hudson's murder. He told the jury that he had also been tried for Hudson's murder, but found not guilty on all counts.

In its closing argument, defense counsel argued that the Commonwealth had taken eight years to "cobble" its case together. He referred to the Commonwealth's witnesses as drug addicts and felons, and said their testimony was inconsistent.

In its closing, the Commonwealth pointed out that a witness had picked Baker's photograph out of a line up as being one of the two men in Hudson's apartment just minutes before his murder; that Evans described two men running from the scene, and that description was consistent with Baker; Williams testified as to key details Baker told her concerning information that had not been released to the public (such as that Hudson had been shot in the back of the head in his kitchen); Sullivan testified that Baker had told her on the phone that he killed Hudson; and Copass-Cheng testified that shortly after Hudson's murder, Baker told her he did something and that if anyone found out, he may not be able to see her and their child. The Commonwealth also discussed Turner's statement that Baker had confessed to Hudson's murder, even though Turner denied its truth at the time of trial. Finally, the Commonwealth pointed to the baseball cap found feet away from Hudson's body matching Baker's DNA.

The jury ultimately found Baker guilty of murder, first-degree robbery, tampering with physical evidence, and possession of a handgun by a convicted felon and recommended he be sentenced to serve a total of forty years' imprisonment. The trial court sentenced Baker accordingly and this appeal followed as a matter of right. Ky. Const. § 110(2)(b).

8

## II. ANALYSIS

### A. Motive

During Baker's trial, the Commonwealth sought to introduce KRE 404(b) evidence of "other crimes, wrongs, or acts" in an attempt to establish Baker's motive for murdering Hudson. Specifically, the Commonwealth wanted to introduce Williams's testimony that Baker's motive to kill Hudson was that Baker was a small-time drug dealer and was jealous of Hudson's thriving drug trade or that he viewed Hudson as his competition. The trial court did not allow this KRE 404(b) testimony, as Williams's testimony would have been the only evidence that Baker was a drug dealer and the admission of the evidence would be more prejudicial than probative. While the Commonwealth was not permitted to introduce this particular evidence of motive, Williams did testify that she saw Baker running back to the car on the night of Hudson's murder carrying money and marijuana. The Commonwealth argues this was evidence from which the jury could infer another motive: namely, that Baker's motive for murdering Hudson was to rob him of money and drugs. In addition to murder, Baker was convicted of first-degree robbery.

During the defense's closing argument, trial counsel told the jury that, while motive was not an element of the crime, the Commonwealth had introduced no evidence of motive. The Commonwealth objected, arguing that the trial court had excluded its motive evidence, and, therefore, the defense should not be permitted to argue the Commonwealth had no theory as to Baker's motive to murder Hudson. The trial court sustained the

9

Commonwealth's objection, and agreed that the defense's argument regarding motive would be misleading to the jury, since the Commonwealth did have a theory of motive, albeit inadmissible. Neither the Commonwealth nor the trial court made any mention of the Commonwealth's alternate theory regarding motive (that Baker's motive in murdering Hudson was to steal his money and marijuana).

Baker points out "that counsel has wide latitude while making opening or closing statements." *Brewer v. Commonwealth*, 206 S.W.3d 343, 350 (Ky. 2006). He argues the trial court abused its discretion in disallowing defense counsel's argument that the Commonwealth did not produce any evidence of a motive. He insists the trial court erred in prevented him from "draw[ing] reasonable inferences from the evidence and propound[ing] [his] explanation[] of the evidence and why the evidence supports [his] respective theor[y] of the case." *Garrett v. Commonwealth*, 48 S.W.3d 6, 16 (Ky. 2001).

However, it was not a reasonable inference that the Commonwealth presented no evidence of motive when, in fact, it presented testimony that Baker was seen carrying money and marijuana near Hudson's apartment around the time of the murder. Again, this was neither argued at trial by the Commonwealth nor relied upon by the trial court in its ruling. Baker argues that because the Commonwealth failed to raise this argument at trial, we should not now consider it. However, "[w]e have long held that we will uphold a correct result made for the wrong reasons." *Jarvis v. Commonwealth*, 960 S.W.2d 466, 469 (Ky. 1998). We are not constrained by either the reasoning of

10

the trial court in making its ruling or the arguments of the Commonwealth at trial in coming to our decision. Because the Commonwealth had presented other evidence from which the jury could infer motive, the trial court did not err in preventing defense counsel from arguing that the Commonwealth had produced no evidence of motive. Because we hold the trial court came to the correct result, we need not determine whether it reached said result for the wrong reasons.

## B. Cell Phone Records and Number

Detective Keith Roberts testified that he subpoenaed call logs from both of Hudson's two cell phones from the carrier. The Commonwealth introduced these call logs as exhibits. The logs showed calls made to and from Hudson's phones, but the only identifying information regarding the calls was the phone number (no names were linked to these numbers). The Commonwealth recalled Susan Copass-Cheng to identify a number from which Baker had called her in the past. The number Copass-Cheng testified to appeared in the call logs as having called Hudson's phone an hour before his death. Baker argues the trial court abused its discretion by allowing the Commonwealth to introduce the call logs, which he insists were unauthenticated. He also argues the trial court erred in allowing the Commonwealth to recall Copass-Cheng to testify regarding a phone number contained in those logs.

### 1. Phone records

Baker objected at trial when the trial court allowed Detective Roberts to testify regarding the call logs from Hudson's cell phone carrier. The

11

Commonwealth countered that the detective could authenticate the call logs, as he had received them in response to a subpoena. The trial court allowed the logs' introduction and the Commonwealth introduced the call logs into evidence as exhibits. Baker argues the call logs were not properly authenticated pursuant to KRE 901. We note that "[r]ulings upon admissibility of evidence are within the discretion of the trial judge; such rulings should not be reversed on appeal in the absence of a clear abuse of discretion." *Simpson v. Commonwealth,* 889 S.W.2d 781, 783 (Ky. 1994). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth. v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

KRE 901(a) reads: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The factual inquiry is whether the evidence is what its proponent claims it to be. *Johnson v. Commonwealth,* 134 S.W.3d 563, 566 (Ky. 2004). "Part of the identification of evidence is a demonstration of its integrity, that it is in fact what its proponent claims it to be." *Rogers v. Commonwealth,* 992 S.W.2d 183, 187 (Ky. 1999). We have held: "The proponent's burden of authentication is slight, which requires only a prima facie showing of authenticity to the trial court. . . . On appellate review, the trial court's finding of authentication is reviewed for abuse of discretion." *Johnson,* 134 S.W.3d at 566.

12

Here, there was no argument to the trial court that the call logs were not what they purported to be. KRE 901(b) gives "examples of authentication or identification conforming with the requirements of this rule," including "(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be." Here, Detective Roberts testified he received the call logs in response to a subpoena he sent to Hudson's cell phone carrier.

Furthermore, KRE 902(11) provides, in pertinent part:

Business records.

(A) Unless the sources of information or other circumstances indicate lack of trustworthiness, the original or a duplicate of a record of regularly conducted activity within the scope of KRE 803(6) or KRE 803(7), which the custodian thereof certifies:

    (i)    Was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

    (ii)    Is kept in the course of the regularly conducted activity; and

    (iii)    Was made by the regularly conducted activity as a regular practice.

Pursuant to this rule, business records (such as the phone records in the case at bar) are "self-authenticating" so long as they meet KRE 902(11)'s dictates. However, the call logs admitted into evidence herein were not certified as required by KRE 902(11) and were, therefore, not self-authenticating.

Even if we were to hold that the records were properly authenticated, our inquiry does not end there. As this Court has held, "the establishment of authenticity of a document does not necessarily mean that the document is

13

admissible because there may be other barriers, e.g., hearsay, to its admission." *Matthews v. Commonwealth*, 163 S.W.3d 11, 23 (Ky. 2005). Hearsay is an out-of-court statement offered into evidence as substantive proof that the matter asserted in the statement is true. KRE 801(c). Here, the call logs were introduced to prove a number Baker was known to use had called Hudson an hour before his death. Hearsay is inadmissible unless it satisfies the requirements of one of the exceptions laid out in our rules. KRE 803. Thus, even properly authenticated documents offered into evidence for the truth of matter asserted therein must qualify under an exception to the hearsay rule.

KRE 803 provides exceptions to the general rule against hearsay. Specifically, KRE 803(6) exempts:

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

The call logs at issue herein fall under this exception as "records of regularly conducted activity." However, the rule goes on to require the testimony of the custodian of the records. In the present case, neither a custodian of the call logs nor any other qualified witness testified at Baker's trial in compliance with

14

the rule.[2] Absent the testimony of the records' custodian or authentication pursuant to KRE 902(11), the call logs were inadmissible hearsay. Therefore, the trial court abused its discretion in admitting the call logs into evidence.

The next step of our analysis is to determine if the trial court's evidentiary error requires reversal of Baker's conviction. An "error may be deemed harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). The call logs served only to show that Baker had called Hudson's phone an hour before Hudson was murdered—not to offer substantive proof he was Hudson's killer. On the other hand, Williams's testimony placed Baker at the scene of the crime, Hart placed him in the apartment with Hudson moments before Hudson's murder; witnesses testified Baker admitted to the murder; Baker gave Williams details about the crime that were not released to the public, such as the fact that Hudson was shot in the back of the head in his kitchen; Baker's DNA was found on a cap found lying next to Hudson's body; Williams testified Baker was running from Hudson's apartment with money and marijuana around the time of the murder; and Copass-Cheng testified he told her he had "done something" and if anyone found out, he may never see her or their child again. Given the volume

---

[2] Had the records been properly certified pursuant to KRE 902(11), the custodian would not have been required to testify pursuant to KRE 803(6)(A). As noted, that is not the case here.

of evidence against Baker, we hold that the trial court's error in admitting the call logs was harmless, as we "can say with fair assurance that the judgment was not substantially swayed by the error." *Id.*

### 2. *Copass-Cheng testimony regarding phone number*

When the Commonwealth recalled Susan Copass-Cheng (the mother of Baker's child) to identify a number from which Baker had called her in the past, Baker's trial counsel objected. Baker now argues the trial court abused its discretion in allowing the Commonwealth to recall Copass-Cheng and that its question exceeded the scope allowed of a rebuttal witness. Since we have already held the trial court erred in admitting the call logs, there is no need to delve further into testimony concerning them. The purpose of Copass-Cheng's recall was merely to identify the number found in the logs as being a number from which Baker had called her in the past. Because the trial court erred in admitting the call logs into evidence, it likewise erred in allowing Copass-Cheng's testimony based upon this inadmissible hearsay found in the logs. However, while this amounts to error, such error is harmless for the reasons expounded upon above. At most, Copass-Cheng's testimony linked a number to Baker which (along with a host of other numbers) called Hudson's phone leading up to his murder. Considering the other evidence adduced at trial, we "can say with fair assurance that the judgment was not substantially swayed by the error." *Id.*

16

## C. Directed Verdict

Baker next argues the trial court erred in failing to grant directed verdicts as to his tampering with physical evidence and possession of a handgun by a convicted felon charges. Baker argues he preserved the error by making a general motion for a directed verdict of acquittal at the conclusion of the Commonwealth's case-in-chief, and renewing that motion both at the conclusion of his case and at the conclusion of the Commonwealth's rebuttal evidence. That motion was based on an alleged general lack of evidence Baker committed any of the charged crimes. However, this Court has held that in order to preserve a motion for directed verdict, the motion must not be generic: "[w]e have . . . held that the motion must state specific grounds for relief and should identify which elements of the alleged offense the Commonwealth has failed to prove. Merely moving summarily for a directed verdict or making a general assertion of insufficient evidence is not enough." *Commonwealth v. Jones*, 283 S.W.3d 665, 669 (Ky. 2009). Therefore, Baker failed to preserve this issue by making a general motion for directed verdict based as to all the charges against him.

While the issue was unpreserved, Baker requests palpable error review pursuant to RCr 10.26. "Palpable error affects the substantial rights of the party and results in manifest injustice. Furthermore, an appellant claiming palpable error must show that the error was more likely than ordinary error to have affected the jury." *Boyd v. Commonwealth*, 439 S.W.3d 126, 129-30 (Ky. 2014). The "required showing is probability of a different result or error so

17

fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

When reviewing a challenge to a trial court's denial of a motion for directed verdict, this Court construes all evidence in the light most favorable to the Commonwealth. *Jones*, 283 S.W.3d at 668. In doing so, we must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). "It should be remembered that the trial court is certainly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence. Obviously, there must be evidence of substance." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.*

If we hold that "the trial court did, in fact, err by failing to direct a verdict of acquittal, that failure would undoubtedly have affected Appellant's substantial rights. And, we likewise observe that the trial result necessarily would have been different if the trial court had directed a verdict in Appellant's favor." *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 837 (Ky. 2003). Therefore, if we hold the trial court erred in failing to direct a verdict, such error is palpable.

### 1. *Tampering with physical evidence*

Baker first alleges that the trial court erred in failing to direct a verdict on his tampering with physical evidence charge. The jury instructions for that charge read:

> You will find [Baker] guilty under the instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:
>
> (A) That in Jefferson County, Kentucky, on or about the 25th day of August, 2007, [Baker] concealed clothing and/or a handgun which he believed was about to be produced or used in an official proceeding;
>
> AND
>
> (B) That he did so with the intent to impair its verity or availability in the official proceeding.

Both parties acknowledge there was no evidence whatsoever adduced at trial regarding Baker's concealment of clothing. Therefore, the Commonwealth bore the burden of producing more than a mere scintilla of evidence that Baker concealed a handgun, which he believed would be used in an official proceeding, and that he did so to prevent its use at the proceeding. Baker argues the Commonwealth failed to meet this burden. We agree.

Charles Evans, Jr. testified that, on the night of Hudson's murder, he saw a man running out of the apartment complex holding a t-shirt which appeared to be covering something. Evans neither identified Baker as the man he saw running nor testified that he saw a gun. This testimony does not amount to "more than a mere scintilla of evidence" or "evidence of substance" required by *Sawhill*, 660 S.W.2d at 5.

19

Furthermore, in *Mullins v. Commonwealth*, 350 S.W.3d 434, 442 (Ky. 2011), this Court held, "walking away from the scene with the gun is not enough to support a tampering charge without evidence of some additional act demonstrating an intent to conceal." Therefore, even had Evans both identified Baker and testified that he saw him leave the scene with the firearm, it would not be enough to support the tampering with physical evidence conviction.

The other testimony concerning Baker's alleged tampering came from Williams. When the Commonwealth asked Williams if she had seen the gun on the night of Hudson's murder, she said, "I think he kept it concealed. It just wasn't out." When the Commonwealth asked Williams if she knew what happened to the gun, she said "I think his cousin took it." Williams provided no basis as to *why* she believed Baker's cousin took the handgun, nor did she state that she had any personal knowledge of what had happened to the gun or that Baker had told her his cousin had taken it. Williams denied that Baker's cousin was at the residence they went to after the murder. When the Commonwealth asked if she remembered "when, if at all Gary came to" the house where she and Baker were, she replied "[m]aybe the next day." Just like Evans's testimony, Williams's statements do not amount to "more than a mere scintilla of evidence" or "evidence of substance." Therefore, even viewing the evidence in a light most favorable the Commonwealth, the trial court should have directed a verdict as to the tampering with physical evidence charge.

Because the trial court erred in failing to direct a verdict as to this charge, the error was palpable. *See Schoenbachler*, 95 S.W.3d at 837. Thus,

20

we reverse and vacate Baker's conviction and corresponding sentence for tampering with physical evidence.

## 2. Possession of a handgun by a convicted felon

Appellant next argues that the trial court erred by failing to direct a verdict on the possession of a handgun by a convicted felon charge for many of the same reasons it should have directed a verdict on the tampering charge. While Baker stipulated as to his felony conviction, he argues the Commonwealth failed to prove that he ever possessed a handgun in order to prove the elements of this charge. We disagree.

Evans's testimony that he saw someone (whom he did not identify as Baker) concealing some item (which he did not identify as a handgun) under a t-shirt does not meet the *Sawhill* requirements. However, even though Williams testified that she did not see Baker with a gun that night, she also testified Baker told her he shot Hudson in the back of the head—and Hudson was, in fact, shot in the back of the head. By the time the jury considered the possession of a handgun by a convicted felon charge, it had already found that Baker had murdered Hudson. Viewing the circumstances in the light most favorable to the Commonwealth, a reasonable juror could believe Baker possessed a handgun based upon the circumstances of Hudson's death and Williams's testimony regarding Baker's statement to her that he had shot Hudson. Therefore, the trial court did not err in failing to direct a verdict as to this charge.

## D. Facilitation Instruction

Baker submitted proposed jury instructions to the trial court containing a lesser-included offense instruction on criminal facilitation as to the murder and robbery charges. He argues the trial court erred in failing to give provide those instructions to the jury.

This Court reviews a trial court's refusal to give a lesser-included offense instruction under the 'reasonable juror' standard set out in *Allen v. Commonwealth*:

> [W]e review a trial court's decision not to give a criminal offense jury instruction under the same "reasonable juror" standard we apply to the review of its decision to give such an instruction. *See Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991). Construing the evidence favorably to the proponent of the instruction, we ask whether the evidence would permit a reasonable juror to make the finding the instruction authorizes. We typically do not characterize our review under this standard as either *de novo* or for abuse of discretion . . . . In this context, the characterization makes little difference and so the inconsistency is more apparent than real. . . . Regardless of the characterization, however, the "reasonable juror" is the operative standard, in the appellate court as well as in the trial court.

338 S.W.3d 252, 255 (Ky. 2011). Therefore, we construe the evidence most favorably to the proponent of the instruction and "ask whether the evidence would permit a reasonable juror to make the finding the instruction authorizes." *Id.*

The trial court has the duty in a criminal case "to prepare and give instructions on the whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999).

22

However, "[a]n instruction on a lesser-included offense is appropriate if and only if on the given evidence a reasonable juror could entertain reasonable doubt of the defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Skinner v. Commonwealth*, 864 S.W.2d 290, 298 (Ky. 1993).

Turning to the specifics of this case, "[a] person is guilty of criminal facilitation when, acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime." KRS 506.080. "Facilitation reflects the mental state of one who is 'wholly indifferent' to the actual completion of the crime." *Perdue v. Commonwealth*, 916 S.W.2d 148, 160 (Ky. 1995), *overruled on other grounds by Huddleston v. Commonwealth*, --- S.W.3d---, No. 2016-SC-000673-MR, 2018 WL 898700 (Ky. Feb. 15, 2018).

Baker had made these same claims in his first trial, in which the jury could not reach a decision regarding his guilt, but acquitted his co-defendant, Duzuan Lester. Baker would have us believe that, since Lester's girlfriend was driving the car (in which he just happened to be riding), a reasonable juror could believe he was indifferent to the crimes. He insists a reasonable juror could infer from the evidence that Baker could have had the gun going into Hudson's apartment, given it to Lester, who used it to shoot Hudson, and then retrieved the weapon and carried it back to the car. Here, however, "given evidence a reasonable juror could [not] entertain reasonable doubt of the

23

defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Skinner*, 864 S.W.2d at 298. Specifically, the evidence adduced at trial included testimony of individuals who said Baker told them he killed Hudson. Williams testified Baker told her he had shot Hudson in the back of the head in the kitchen of his apartment. Williams further testified that, as Baker ran back to the getaway car, money and marijuana were falling from his pockets from the robbery. Baker argues the jury could have disbelieved these witnesses. However, he did not present an alternative theory regarding Hudson's murder and robbery. There was no evidence that Baker was indifferent to the murder and robbery. As such, based on the evidence at trial, a reasonable juror could not have found Baker guilty of facilitating, but not committing, these crimes.

For these reasons, we affirm the trial court's ruling as to the facilitation instructions.

### E. Cumulative Error

Baker's final argument is that cumulative error rendered his trial fundamentally unfair. "We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). That is not the case herein. While we found error in the trial court's admission of the call logs, as they were inadmissible hearsay, that error did not "border on the prejudicial." Furthermore, the only other error this Court found was regarding Baker's tampering with physical evidence charge. Given the gravity

24

of the other charges against him, this Court does not believe that error—which was entirely limited to the tampering charge—impacted Baker's other convictions or rendered his trial fundamentally unfair.

### III. CONCLUSION

For the foregoing reasons, we reverse and vacate Baker's conviction and corresponding sentence for tampering with physical evidence. We affirm the trial court as to the remainder of the charges and their corresponding sentences.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Daniel T. Goyette
Louisville Metro Public Defender

Cicely Jaracz Lambert
Chief Appellate Defender
Louisville Metro Public Defender


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Susan Roncarti Lenz
Assistant Attorney General

Jason Bradley Moore
Assistant Attorney General