**Ricky BARRETT, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

2014–SC–000048–DG

Supreme Court of Kentucky.

RENDERED: SEPTEMBER 24, 2015

---

12.  *Williams v. Florida*, 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

13.  *D'Angelo*, 598 F.2d at 1005.

14.  *Id.*

Counsel for Appellant: Roy Alyette Durham, II, Department of Public Advocacy.

Counsel for Appellee: Jack Conway, Attorney General of Kentucky, David Bryan Abner, Assistant Attorney General.

## OPINION OF THE COURT BY JUSTICE KELLER

Ricky Barrett entered a conditional guilty plea to first degree possession of a controlled substance following the trial court's denial of his motion to suppress evidence. The Court of Appeals affirmed, and this Court granted discretionary review. Barrett argues that police entered and searched his home in violation of the Fourth Amendment to the U.S. Constitution and Section 10 of the Kentucky Constitution. For reasons stated herein, we affirm the Court of Appeals.

## I. BACKGROUND.

Covington Police received a tip from an anonymous caller that Ricky Barrett was currently located at 2721 Rosina Avenue. Dispatch confirmed that multiple arrest warrants had been issued for Barrett and directed officers to the residence. Dispatch also informed the officers that the last police contact with Barrett had occurred at that address and that Barrett was listed as the homeowner.[1]

---

1. The actual homeowners were later determined to be Ricky Barrett, Sr. and Deborah

Officer Edwards arrived first and walked around the house to identify the exit points. During his look around, Officer Edwards heard voices and the sound of clinking glasses or dishes from inside. Shortly thereafter, Officer Isaacs arrived and stayed at the back of the house while Officer Edwards returned to the front. When Officer Edwards first knocked on the front door and announced himself, the voices inside stopped, but no one answered the door. Officer Christian then arrived, and he replaced Officer Isaacs at the back door, and Officer Isaacs joined Officer Edwards at the front door.

Officer Edwards continued to knock on the door using his flashlight to knock louder. Without touching the handle or the lock, this added force caused the door to open.[2] With this, the officers became concerned that a crime was being committed inside, so, acting according to common yet unwritten department practice, they again announced their presence and, hearing no response, entered.

Once inside, Officer Edwards positioned himself at the bottom of a staircase just inside the door, and Officer Isaacs searched the downstairs rooms. After Officer Edwards again announced the officers' presence inside the house, he heard a woman's voice call out from the second floor. Officer Edwards asked her to come downstairs, which she did. The woman told the officers that she was Deborah Barrett and that she owned the house. When asked if Ricky Barrett was inside the house, Mrs. Barrett replied that he was hiding upstairs in a closet. Officer Edwards remained downstairs with Mrs. Barrett, and Officers Isaacs and Christian proceeded up the stairs to locate Barrett.

The officers found a hallway closet at the top of the stairs, and Officer Christian remained outside of it while Officer Isaacs searched the other rooms on the second floor. While searching one bedroom, Officer Isaacs observed syringes and other drug paraphernalia in plain view. Officer Christian then heard noise from inside the hallway closet and called out for assistance. Officer Isaacs immediately returned and both officers found Barrett hiding inside and arrested him. Officer Isaacs then collected three syringes and a spoon and filter containing possible heroin residue from the bedroom, which Mrs. Barrett later identified as Ricky Barrett's.

A Kenton County Grand Jury indicted Barrett for first-degree possession of a controlled substance (heroin). Barrett filed a motion to suppress the evidence collected from the bedroom. The trial court held a hearing on June 25, 2012 and, after hearing testimony from Officers Edwards and Isaacs and arguments from the parties, denied the motion. Barrett entered a conditional guilty plea, and the court sentenced him to 18 months' imprisonment. The Court of Appeals affirmed the trial court's denial of Barrett's motion to suppress, and this Court granted discretionary review. For the following reasons, we affirm.

## II. STANDARD OF REVIEW.

The standard of review of the trial court's denial of a suppression motion is

---

Barrett, Barrett's father and stepmother. Police did not cross-reference the dates of birth to confirm who owned the house, but Barrett does not argue that the officers acted in bad faith. Furthermore, although not the owner, it is undisputed that Barrett lived in the house.

2. Both Officers Edwards and Isaacs testified at the Suppression Hearing that the use of the flashlight caused the door to open. However, on cross-examination, Officer Edwards admitted that he reported in the Uniform Citation that he "located the front door ajar." Officer Edwards explained that the door was not ajar but was not securely shut either.

twofold: first, the trial court's findings of fact are reviewed for clear error and are deemed conclusive if supported by substantial evidence; and second, the trial court's legal conclusions are reviewed *de novo*. *Commonwealth v. Marr*, 250 S.W.3d 624, 626 (Ky. 2008).

## III. ANALYSIS.

As he did before the trial court and the Court of Appeals, Barrett argues that: the initial entry into the residence by police was unlawful; and the search of the upstairs rooms exceeded a lawful scope. If either is correct then the evidence should have been suppressed as fruit of the poisonous tree in violation of the Fourth Amendment. We address each argument in turn.

### A. The Initial Entry.

The Fourth Amendment to the U.S. Constitution and Section 10 of the Kentucky Constitution protect citizens against unreasonable searches and seizures by the government. The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). However, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

This Court has cited this rule in two prior decisions, but we have never had occasion to interpret the "reason to believe" standard set forth in *Payton*. *See Kerr v. Commonwealth*, 400 S.W.3d 250, 265 (Ky. 2013) and *Farris v. Commonwealth*, No. 2001–SC–0300–MR, 2003 WL 1938730, at *2 (Ky. Apr. 24, 2003). We continue to follow the *Payton* rule; nonetheless, before we apply it here, we must clarify the scope of the standard.

Despite what appears to be clear language, courts are split over the meaning of the phrase "reason to believe." The majority of courts that have considered the standard have held that it is less exacting than probable cause. *See United States v. Pruitt*, 458 F.3d 477, 484 (6th Cir. 2006); *United States v. Route*, 104 F.3d 59, 62–63 (5th Cir. 1997); *United States v. Risse*, 83 F.3d 212, 216–17 (8th Cir. 1996); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995). Other courts have held that the contrast between reason to believe and probable cause is a distinction without a difference. *See United States v. Gorman*, 314 F.3d 1105, 1114 (9th Cir. 2002) and *United States v. Barrera*, 464 F.3d 496, 501 n.5 (5th Cir. 2006) (noting that the distinction between probable cause and reason to believe is "more about semantics than substance"). A third group of courts have declined to interpret the standard because they found that the police entry in question was not justified under any interpretation. *See United States v. Hill*, 649 F.3d 258, 263 (4th Cir. 2011) and *United States v. Hardin*, 539 F.3d 404, 416 (6th Cir. 2008) (declining to follow *Pruitt's* holding as dicta).

The Sixth Circuit's line of decisions on this question is noteworthy. In *Pruitt*, police arrested Pruitt in his home for possession of contraband. 458 F.3d at 479–80. The Sixth Circuit held that the search warrant used by police to enter the residence was procedurally invalid; however, the Court denied Pruitt's motion to suppress because there was already a warrant outstanding for his arrest and police entered the residence with a reasonable be-

lief[3] that Pruitt was inside. *Id.* at 480–83. The Court held, "reasonable belief is a lesser standard than probable cause, and that reasonable belief that a suspect is within the residence, based on common sense factors and the totality of the circumstances, is required to enter a residence to enforce an arrest warrant." *Id.*

Two years later, a different panel of the Court decided *Hardin.* There, police, acting pursuant to an arrest warrant and multiple informants, arrested Hardin in his girlfriend's apartment and charged him with possession of contraband found during the arrest. *Id.* at 407–08. The issue in the case concerned the proper standard for evaluating the quantum of proof required for police to enter a residence to execute an arrest warrant. *Id.* at 410. The government argued that *Pruitt's* "lesser reasonable belief standard" and not probable cause should have applied. *Id.* However, the Court declined to follow *Pruitt,* labeling its holding as dicta because the Court found the police clearly had probable cause to believe that Pruitt was inside the residence. Therefore, the choice of one standard over the other was not necessary to the outcome of the case. *Id.* at 413. The Court then held that the information the police possessed failed to establish even a reasonable belief that Hardin was inside the apartment, so the Court declined to adopt either standard. *Id.* at 426.

▇▇▇ In full consideration of the diversity of legal authority and the reasoning supporting that authority, we expressly adopt the plain language reason to believe standard from *Payton* and reject the probable cause standard. Thus, police executing a valid arrest warrant may lawfully enter a residence if they have reason to believe that the suspect lives there and is presently inside. Reason to believe is established by looking at common sense factors and evaluating the totality of the circumstances and requires less proof than does the probable cause standard. *Pruitt,* 458 F.3d at 482.

We adopt this rule for three key reasons. First and foremost, a plain reading of *Payton* requires reason to believe and not probable cause. In the words of one federal district court, "when the Court wishes to use the term 'probable cause,' it knows how to do so." *Smith v. Tolley,* 960 F.Supp. 977, 987 (E.D.Va. 1997). In setting forth the rule in *Payton,* the Supreme Court required the arrest warrant to be "founded on probable cause," yet set reason to believe as the standard to justify entry. 445 U.S. at 603, 100 S.Ct. 1371. Therefore, the Court was clearly aware of the differences and chose to require separate standards. As the *Pruitt* Court noted:

> By way of example, in *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) the Supreme Court held:
>
>> [B]y requiring a protective sweep to be justified by *probable cause* to believe that a serious and demonstrable potentiality for danger existed, the Court of Appeals of Maryland applied an unnecessarily strict Fourth Amendment standard. The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a *reasonable belief* based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* at 337, 110 S.Ct. 1093 (emphasis added). While *Buie* addressed the stan-

---

**3.** Courts have used "reasonable belief" synonymously with "reason to believe." *See, e.g., Hardin,* 539 F.3d at 410; *Gorman,* 314 F.3d at 1111.

dard to be applied by police for conducting protective sweeps, it is evident that the Supreme Court does not use the terms probable cause and reasonable belief interchangeably, but rather that it considers reasonable belief to be a less stringent standard than probable cause. *Pruitt,* 458 F.3d at 484.

■ Second, the rights of suspects will be adequately protected by using this standard. When police execute a valid arrest warrant, a neutral and detached magistrate has already made a probable cause evaluation that the suspect has committed a crime. *Commonwealth v. Marshall,* 319 S.W.3d 352, 356 (Ky. 2010). It would be overly burdensome for police to make a second probable cause determination when executing a valid arrest warrant. Furthermore, a third party's rights are not infringed because a search warrant is required to enter into a third-party's residence to arrest a non-resident suspect. *Steagald v. United States,* 451 U.S. 204, 205–06, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).

Third, with this holding we join the majority of other courts in adopting the reason to believe standard. Although not controlling, we are persuaded by the reasoning of the overwhelming majority of federal circuit and state courts that have held that the "reason to believe" language is a less exacting standard than probable cause. Wayne R. LaFave, 3 Search And Seizure: A Treatise On The Fourth Amendment § 6.1(a) at n. 22 (5th ed. 2014) (citing *Commonwealth v. Silva,* 440 Mass. 772, 802 N.E.2d 535 (2004)).

■ As applied here, the police had a reason to believe, according to common sense factors and evaluating the totality of the circumstances, that Barrett lived at 2721 Rosina Avenue and was currently located inside. The unidentified caller clearly stated that Barrett was present at the address. The dispatcher confirmed that the last police contact with Barrett occurred at that address and reported that Barrett was the homeowner. Although this latter fact turned out to be false (Ricky Barrett, Sr. was the actual homeowner), it is undisputed that Barrett lived in the house and there is no evidence that police acted in bad faith. Once police arrived at the house, the sound of voices and movement inside perpetuated the belief that Barrett was inside. *See Route,* 104 F.3d at 62–63 (holding that the sound of a television on the inside of the house and the presence of a car in the driveway were sufficient to form the basis of the reasonable belief that the suspect was in the home). Finally, the fact that the voices and sounds from within the house stopped when Officer Edwards knocked and announced his presence bolstered the belief that someone wishing to avoid police contact was inside. Armed with this reasonable belief, police were constitutionally permitted to proceed inside the house to arrest Barrett when no one answered the door.

In sum, we continue to follow a plain reading of the *Payton* rule which allows police to enter a suspect's residence with a valid arrest warrant when they have a reason to believe that the suspect lives in the residence and can currently be found inside. Reason to believe requires less proof than probable cause and is established by evaluating the totality of the circumstances and common sense factors. Because we find that the police satisfied the appropriate standard, we discern no error in the trial court's denial of Barrett's motion to suppress as to the initial police entry.

### B. The Search.

■ Barrett also argues that once the officers entered the residence, their search

of the upstairs rooms exceeded a lawful scope. We disagree for two reasons.

It is well established that warrantless searches and seizures inside a home are presumptively unreasonable. *Brumley v. Commonwealth*, 413 S.W.3d 280, 284 (Ky. 2013). As set forth above, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S. at 603, 100 S.Ct. 1371. It would be absurd to hold that the *Payton* rule only allows police inside the threshold and no further. Taken to its logical conclusion, such a restrictive construction of the rule would result in the search being confined to the area just inside the doorway. Instead, when police have lawfully entered a suspect's residence to execute a valid arrest warrant pursuant to *Payton*, they may search anywhere the suspect may reasonably be found but must terminate the search when the suspect is located. *United States v. Pallais*, 921 F.2d 684, 691 (7th Cir. 1990) ("Under *Payton*, police armed with an arrest warrant can search the entire residence of the person named in the warrant in order to execute it....")

Here, the police lawfully entered Barrett's house and immediately began searching for him on the first floor. When Mrs. Barrett revealed that Barrett was hiding in a closet upstairs, police continued their search on the second floor. The officers did, in fact, find a hall closet at the top of the stairs; however, Mrs. Barrett did not specify in which upstairs closet Barrett was hiding. She could just as easily have been referring to a closet in a bedroom. To promote officer safety and conduct a quick general search before a closet by closet search, police reasonably checked the other rooms on the second floor before opening the hallway closet.

Furthermore, as soon as Officer Christian heard noise from inside the closet he called for Officer Isaacs to end his search of the other rooms and assist him. Thus, the officers did not exceed the scope of a lawful search under *Payton*.

Moreover, the search of the bedroom was permissible under the protective sweep exception to the warrant requirement. *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *Guzman v. Commonwealth*, 375 S.W.3d 805, 807 (Ky. 2012). *Buie* permits two types of protective sweeps incident to an arrest that are reasonable and lawful under the Fourth Amendment. 494 U.S. at 334, 110 S.Ct. 1093; *Brumley*, 413 S.W.3d at 284. The first type allows police, as a precautionary matter and without probable cause or reasonable suspicion, to look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. *Id.* The second type allows police to undertake a broader search if there are "articulable facts, which taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

The Commonwealth argues that Officer Isaac's search of the bedroom falls within *Buie*'s first category. We agree. We addressed a similar situation in *Kerr v. Commonwealth*. There, police arrested Kerr in the hallway of a guestroom, and this Court permitted the search of a nearby bedroom as a place adjoining the place of arrest from which an attack could be immediately launched. 400 S.W.3d 250, 267–68 (Ky. 2013). The same holds true here. Officer Isaacs performed a cursory visual inspection of the upstairs rooms to look for Barrett or anyone else who might be hiding. The rooms were adjoining the place

of arrest, and there are no facts to suggest that Officer Isaacs exceeded the scope of his search to look in places where a person could not hide.

Under either warrant exception, Officer Isaacs was lawfully in a position to view the drug paraphernalia and there is no dispute that the items were in plain view and their incriminating nature was immediately apparent. *Hazel v. Commonwealth,* 833 S.W.2d 831, 833 (Ky. 1992). Thus, the plain view doctrine applies, and the evidence was lawfully seized.

## IV. CONCLUSION.

For the reasons stated above, we affirm the trial court's denial of Barrett's motion to suppress the drug paraphernalia evidence.

All sitting. All concur.