RENDERED:  APRIL 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0858-MR

AUSTON STEWART                                                          APPELLANT

v.                  APPEAL FROM ROWAN CIRCUIT COURT
                    HONORABLE DAVID A. BARBER, JUDGE
                            ACTION NO. 17-CR-00058

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, GOODWINE, AND JONES, JUDGES.

CETRULO, JUDGE:  Appellant Austin[1] Stewart ("Stewart") appeals a January

2018 order denying his motion to suppress evidence and the March 2022 jury

verdict and final judgment in Rowan Circuit Court finding him guilty of one count

of violating Kentucky Revised Statute ("KRS") 510.155 and sentencing him to five

years of incarceration.  After review, we affirm.

---

[1] The Appellant's name appears as "Austin" on his judgment and sentence and all circuit court documents, but as "Auston" on the Court of Appeals' documents.

**BACKGROUND**

In March 2017, Detective Brian Cooper of the Kentucky State Police ("Detective Cooper") received a complaint of a juvenile receiving inappropriate messages and photographs from Stewart, an adult male, through Facebook. With permission from the juvenile's mother, Detective Cooper took over the juvenile's Facebook account and continued the conversation undercover, posing as the juvenile. During those conversations, Stewart asked for and sent sexually explicit messages, photographs, and videos, and as a result, Detective Cooper obtained a felony arrest warrant.

In April 2017, Detective Cooper, accompanied by Winchester police, arrested Stewart at his home, confiscated Stewart's phone, then conducted a custodial interview at the police station. One month later, the Rowan County Grand Jury indicted Stewart on unlawful use of electronic means to induce a minor to engage in sexual or other prohibited activities (KRS 510.155).

In September 2017, Stewart filed a motion to suppress the police custodial interview and the contents of his phone, and in January 2018, the circuit court held a suppression hearing. At that hearing, Detective Cooper testified that during their messaging, Stewart said he drove a white Chevy Impala. Detective Cooper also testified that he obtained Stewart's address off his state identification

card[2] and drove past Stewart's home where he saw a white Chevy Impala in the driveway. Also, Detective Cooper noticed a Winchester police cruiser parked in a nearby driveway and stopped to ask the officer about Stewart. The neighboring officer stated he knew Stewart personally and confirmed Stewart's residence.

Accompanied by the Winchester officer, Detective Cooper went back to Stewart's residence a few days later to serve the arrest warrant. Detective Cooper again saw a white Chevy Impala parked in the driveway. Prior to knocking on the door, the detective sent Stewart a message through the Facebook account they had been using to communicate. Detective Cooper testified that Stewart's mother answered the door and indicated that Stewart was home and in his bedroom in the basement. Detective Cooper testified that he entered the home and went to the basement. The detective testified that he asked Stewart, "Is that your phone? Do you care if I look at it?" Detective Cooper testified that Stewart gave him permission to look at his phone, and the detective saw, on the phone's screen, the message he had sent prior to entering the home. Then, Detective Cooper informed Stewart that he was under arrest and took him to the Winchester police station.

During the suppression hearing, Stewart asked Detective Cooper how he knew Stewart's actual address because the address where he found and arrested Stewart was different than the address on the arrest warrant. Detective Cooper

---

[2] He could not remember if it was a state identification card or driver's license.

could not remember how or where he got the correct address, but indicated he had confirmed Stewart's actual address with the neighboring officer. Stewart asked Detective Cooper if Stewart's mother asked him to enter; the detective said the mother indicated where Stewart was located and started walking in that direction. He said, "She didn't ask me to come in; she didn't ask me not to come in either." The court denied Stewart's motion to suppress.

In March 2022, the Rowan Circuit Court held Stewart's trial. The Commonwealth entered into evidence – without objection – photographs and messages from the online conversations between Stewart and the juvenile and between Stewart and the undercover Detective Cooper. These included filtered photographs of Stewart's face, naked photographs of Stewart (with his face clearly visible), videos of him masturbating, and Stewart's requests for the same from the juvenile. The Commonwealth did not attempt to admit Stewart's phone into evidence at the trial.[3] All the relevant photographs and videos admitted at trial came from the device Detective Cooper used to communicate with Stewart and the juvenile's Facebook account.[4]

---

[3] Detective Cooper testified that police did not have the technology in 2017 to access the Facebook application on Stewart's phone. Police never accessed Stewart's Facebook account.

[4] Stewart also sent the juvenile his Snapchat profile and username, "StewartAuston50."

-4-

Detective Cooper testified that after the arrest, he transported Stewart to the Winchester police station. At the station, Stewart signed a consent for police to search his phone[5] and agreed to an interview with Detective Cooper. The Commonwealth admitted into evidence – without objection – both the phone-search consent form and the custodial interview. In this interview, Stewart admitted sending sexual videos of himself to a person he believed to be a 13-year-old girl. He stated, "I knew I done wrong. . . . I know you got the proof . . . . I'm not going to say [*inaudible*] I didn't do it."

Stewart testified at trial that his phone was hacked, and he was not the person communicating with the juvenile. He also testified that he never knowingly signed a consent form allowing police to search his phone. After a 19-minute deliberation, the jury found Stewart guilty and ultimately recommended five years to serve in prison, which the trial court accepted. Stewart appealed.

## ANALYSIS

On appeal, Stewart argues (A) the trial court erred in denying his motion to suppress, and (B) the trial court committed palpable error by allowing the Commonwealth to introduce evidence without laying foundation.

---

[5] Detective Cooper testified that Stewart – in front of the detective – willingly, knowingly signed the phone search consent form.

**A. The trial court did not err by denying Stewart's motion to suppress**.

> The standard of review of the trial court's denial of a suppression motion is twofold: first, the trial court's findings of fact are reviewed for clear error and are deemed conclusive if supported by substantial evidence; and second, the trial court's legal conclusions are reviewed *de novo.*

*Barrett v. Commonwealth*, 470 S.W.3d 337, 340-41 (Ky. 2015) (citing *Commonwealth v. Marr*, 250 S.W.3d 624, 626 (Ky. 2008)).

"Substantial evidence is evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Commonwealth v. Jennings*, 490 S.W.3d 339, 346 (Ky. 2016) (internal quotation marks omitted) (quoting *Owens-Corning Fiberglas Corp., v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998)).

Here, the trial court made oral findings at the conclusion of the suppression hearing and stated, "I'm going to deny the motion to suppress given *Barrett* [*supra*] and the fact that Detective Cooper was told that [Stewart] was in the home and he had a right to enter and place him under arrest." On appeal, Stewart argues the trial court erred. He asserts that Detective Cooper illegally entered his home,[6] and as a result, the court improperly admitted the custodial

---

[6] Stewart also argues the police illegally searched his bedroom and seized his phone. However, this argument does not warrant further analysis because (1) while in his bedroom, Stewart *consented* to Detective Cooper viewing his phone and Stewart does not deny this; (2) police

interview because it was fruit of the poisonous tree.[7]  Conversely, the

Commonwealth again relies on *Barrett* to support the contention that Detective

Cooper did not enter the home illegally, because the detective had a valid arrest

warrant and "reason to believe" Stewart was in the home.

The Fourth Amendment to the United States Constitution and

Section 10 of the Kentucky Constitution protect citizens from unreasonable

searches and seizures.  While warrantless searches and seizures inside a home are

presumptively unreasonable, a valid arrest warrant permits police to enter a

suspect's home when there is reason to believe the suspect is inside.  *Simpson v.*

*Commonwealth*, 474 S.W.3d 544, 548 (Ky. 2015) (quoting *Payton v. New York*,

445 U.S. 573, 603, 100 S. Ct. 1371, 1373, L. Ed. 2d 639 (1980)).  More

specifically, "an arrest warrant founded on probable cause implicitly carries with it

---

officers may seize and secure cell phones incident to arrest (*Riley v. California*, 573 U.S. 373, 388, 134 S. Ct. 2473, 2486, 189 L. Ed. 2d 430 (2014) (citations omitted)); (3) police officers, in effectuating a valid arrest warrant, may search the area adjoining the place of a defendant's arrest (*Kerr v. Commonwealth*, 400 S.W.3d 250, 267-68, (Ky. 2013)); (4) Stewart gave *written consent* for police to search his phone at the police station and Detective Cooper testified that Stewart signed this form knowingly and willingly; (5) Stewart's phone and its contents were not accessed prior to his custodial interview and Stewart does not deny this; (6) Stewart's phone's Facebook application was never accessed by police, and Stewart does not deny this; and (7) Stewart's phone was not admitted at trial, and Stewart does not deny this.

[7] Stewart's brief states the address on the *arrest warrant* does not match the address where Detective Cooper arrested Stewart.  He does not specifically argue that such a discrepancy has legal ramifications, nor does he cite any precedent that would suggest such a discrepancy negated the validity of the arrest warrant.  It is the *appellant* who must make the arguments, not the appellate court.  *See* Kentucky Rule of Appellate Procedure 32(A)(2).  Also, we note, the warrant in question is an *arrest* warrant (for a person) not a *search* warrant (for a specific location).

the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Barrett*, 470 S.W.3d at 344 (citations omitted). If Detective Cooper's actions – entering Stewart's home and arresting him – were improper, as Stewart contends, there could be residual legal ramifications based on the "fruit of the poisonous tree" doctrine.

> The exclusionary rule requires the suppression of any evidence that is either the direct or indirect result of illegal police conduct. The fruit of the poisonous tree doctrine precludes not only the admissibility of evidence which is the direct result of a violation of the defendant's rights, but also any evidence obtained by an exploitation of that violation.

*Stevens v. Commonwealth*, 354 S.W.3d 586, 590 (Ky. App. 2011) (citation omitted).

In *Barrett*, police received an anonymous tip that a suspect with multiple arrest warrants was currently located at a particular home. 470 S.W.3d at 339. Dispatch "informed the officers that the last police contact with [the suspect] had occurred at that address and that [the suspect] was listed as the homeowner."[8] *Id.* Before announcing themselves, police walked the perimeter of the home and heard voices inside. *Id.* at 340. When police knocked on the front door, the voices stopped, but no one answered. *Id.* Police continued to knock with a flashlight, and

---

[8] The home ultimately belonged to the suspect's father, with the same name, but the suspect did not challenge this at trial.

due to the force of the knocks alone, the front door opened. *Id.* Police entered the home and announced their presence. *Id.* A woman called from upstairs and came downstairs as directed. *Id.* Upon questioning, the woman admitted that the suspect police were looking for was hiding in an upstairs closet. *Id.* Police searched for the suspect upstairs and while searching for him, they found drug paraphernalia in plain view. *Id.* Police arrested the suspect and after a denied motion to suppress, he entered a conditional guilty plea. *Id.* This Court affirmed the trial court's denial of the motion to suppress, and the Kentucky Supreme Court granted discretionary review. *Id.*

Ultimately, Our Supreme Court clarified the "reason to believe" standard relevant here:

> [P]olice executing a valid arrest warrant may lawfully enter a residence if they have reason to believe that the suspect lives there and is presently inside. Reason to believe is established by looking at common sense factors and evaluating the totality of the circumstances and requires less proof than does the probable cause standard.

*Id.* at 342 (citation omitted).

Stewart implies the Commonwealth did not meet the *Barrett* "reason to believe" standard, or that *Barrett* is distinguishable, because here, the officers had "no reason to believe that [Stewart] was currently at the residence." Simply, we do not agree.

The trial court's role was to look at "common sense factors" and the "totality of the circumstances." *See id.* Then our role is to review the trial court's decision to determine whether it was supported by substantial evidence. *Id.* at 340-41 (citation omitted). Here, Detective Cooper had a valid felony arrest warrant and reason to believe Stewart was inside the home: a white Chevy Impala matching the car Stewart said he drove was parked in the driveway; the neighboring officer confirmed Stewart lived at that location; and Stewart's mother admitted to Detective Cooper that Stewart was in the home, in his basement bedroom. The trial court found Detective Cooper entered Stewart's residence with a valid arrest warrant where he had reason to believe that Stewart lived and was currently inside. These findings are not clearly erroneous because they are supported by substantial evidence. Thus, Detective Cooper did not improperly enter the residence, nor he did violate Stewart's Fourth Amendment rights (or Section 10 of the Kentucky Constitution). We detect no fruit, poisonous or otherwise. As there were no search and seizure violations, the custodial interview was not fruit of a poisonous tree.

**B.** **The trial court did not err when it allowed the Commonwealth to introduce the Facebook messages**.

Stewart argues that the trial court improperly allowed the Commonwealth to admit the Facebook messages into evidence. "An appellate court's standard of review for admission of evidence is whether the trial court

-10-

abused its discretion." *Brewer v. Commonwealth*, 206 S.W.3d 313, 320 (Ky. 2006)

(citation omitted). "The test for abuse of discretion is whether the trial judge's

decision was arbitrary, unreasonable, unfair, or unsupported by sound legal

principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations

omitted). However, here, Stewart did not preserve the issue, and we may only

review for palpable error.

> Under the Kentucky Rules of Criminal Procedure
> (RCr) 10.26, an unpreserved error may only be corrected
> on appeal if the error is both "palpable" and "affects the
> substantial rights of a party" to such a degree that it can be
> determined "manifest injustice resulted from the error."
> For error to be palpable, "it must be easily perceptible,
> plain, obvious and readily noticeable." [*Brewer*, 206
> S.W.3d at 349]. . . . Ultimately, "[m]anifest injustice is
> found if the error seriously affected the fairness, integrity,
> or public reputation of the proceeding." *Kingrey v.
> Commonwealth*, 396 S.W.3d 824, 831 (Ky. 2013) (quoting
> *McGuire v. Commonwealth*, 368 S.W.3d 100, 112 (Ky.
> 2012)).

*Stephens v. Commonwealth*, 680 S.W.3d 887, 898 (Ky. 2023) (quoting *Young v.

Commonwealth*, 426 S.W.3d 577, 584 (Ky. 2014)).

Stewart argues Kentucky Rule of Evidence ("KRE") 901(a) requires

authentication before admission of evidence, but here, the Commonwealth sought

to admit the Facebook messages without authentication. He asserts, "[t]here was

no evidence at trial that [Stewart] sent the messages to the alleged victim in this

case. . . . No foundation was laid as to [Stewart's] ownership of the Facebook

-11-

account and time and date of the messages cannot be determined from the record."

Further, he asserts, "Facebook was never reached [] to properly link the account

that [Detective Cooper] was messaging to [Stewart's] cellphone."

Conversely, the Commonwealth contends it properly authenticated the

Facebook messages; hence the trial court did not err. We agree.

KRE 901(a) states, "The requirement of authentication or

identification as a condition precedent to admissibility is satisfied by evidence

sufficient to support a finding that the matter in question is what its proponent

claims." "The proponent's burden of authentication is slight, which requires only a

prima facie showing of authenticity to the trial court." *Johnson v. Commonwealth*,

134 S.W.3d 563, 566 (Ky. 2004) (citation omitted). "The factual inquiry is

whether the evidence is what its proponent claims it to be." *Baker v.*

*Commonwealth*, 545 S.W.3d 267, 275 (Ky. 2018) (citing *Johnson*, 134 S.W.3d at

566). A witness with knowledge may authenticate evidence by testifying that the

evidence is what it is claimed to be. *Id.* (citing KRE 901(b)(1)).

Here, the messages contained photographs of Stewart's face, sent both

before and after Detective Cooper took over the account. These photographs, as

the Commonwealth asserts, "clearly depicted and indicated it was Stewart's

Facebook account." Detective Cooper matched the photographs sent from the

Facebook account with the state's license photo (and identification card) database,

and Detective Cooper confirmed Stewart's identity.  Also, Detective Cooper testified that the messages presented were an accurate description of the conversations he had with Stewart, and the messages were consistent with the conversations between Stewart and the juvenile.  Detective Cooper testified that he saw the message (that he sent immediately before entering Stewart's house to arrest him) on Stewart's phone, confirming the Facebook account he was interacting with was linked to Stewart's current phone.  Further, in the custodial interview, Stewart admitted to Detective Cooper that he sent the messages and videos to the juvenile, and other females.

"Exercising its considerable discretion, a trial court may admit a piece of evidence solely on the basis of testimony from a knowledgeable person that the item is what it purports to be and its condition has been substantially unchanged." *Kays v. Commonwealth*, 505 S.W.3d 260, 270 (Ky. App. 2016) (citing *Grundy v. Commonwealth*, 25 S.W.3d 76, 80 (Ky. 2000)).  Whether there is enough evidence of authenticity to admit evidence is within the discretion of the trial court. *Brafman v Commonwealth*, 612 S.W.3d 850, at 866 (Ky. 2020).  Here, Detective Cooper's testimony established the requisite authentication.  Thus, the trial court did not err.

## CONCLUSION

In light of the foregoing, we AFFIRM the trial court's January 2018 order denying Stewart's motion to suppress evidence and the March 2022 jury verdict and final judgment of the Rowan Circuit Court.

ALL CONCUR.


BRIEF FOR APPELLANT:

Derrick L. Harris
Lexington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky