RENDERED: MARCH 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0866-MR

CHRISTOPHER NATION
APPELLANT

v.
APPEAL FROM NELSON CIRCUIT COURT
HONORABLE JOSEPH G. BALLARD, JUDGE
ACTION NO. 22-CR-00094

COMMONWEALTH OF KENTUCKY
APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, EASTON, AND McNEILL, JUDGES.

ACREE, JUDGE: Christopher Nation, Appellant, pleaded guilty on condition that he preserved his right to appeal the Nelson Circuit Court's denial of his motion to suppress evidence of two firearms law enforcement located when executing a warrant for Nation's arrest. We affirm.

# BACKGROUND

On December 26, 2021, members of the Nelson County Sheriff's Office (NCSO) arrived at the home of Nation's mother, Denise Vicencio. Law enforcement found Nation – a convicted felon – inside a shed behind the home. The police found two firearms inside the shed with him.

A grand jury indicted Nation on two counts of possession of a firearm by a convicted felon. Nation moved to suppress the two firearms seized during his arrest. The circuit court held a hearing on the motion and Detective Teater was the first to testify. He said the NCSO received an anonymous tip that Nation could be found in the shed behind Vicencio's house. Additionally, based on prior interactions and calls to the NCSO related to Nation, Detective Teater knew Nation was likely to be found at Vicencio's residence and that Nation commonly stayed inside the shed.

Nation had an outstanding warrant for his arrest. Detective Teater and other officers went to Vicencio's home, and saw the shed was close to the home and visible from the driveway. Detective Teater described the shed as being an older structure with holes through which one could look inside the shed without prying or otherwise physically manipulating the shed.

From outside, Detective Teater could see Nation inside. He also observed a shotgun approximately six feet from Nation. Detective Teater was

aware Nation was a convicted felon. He instructed Nation to exit. Nation complied, though not initially. Detective Teater then entered and seized the shotgun and a .22 caliber rifle. Detective Teater testified he did not believe any officer asked Vicencio for permission to search the shed. He also testified that he entered the shed and seized the shotgun to ensure the safety of himself and the other officers. He was unaware at the time that two other people were inside the shed with Nation.

Vicencio testified next. She said she woke to the police pounding on her front door and that she told them to leave. Contrary to Detective Teater's testimony, she testified she saw police officers prying boards off the shed to see inside. She testified she did not know Nation and the others were inside the shed and believed they must have gained entry by breaking in. She also testified she was aware Nation was wanted by law enforcement.

The circuit court denied Nation's motion to suppress the recovered firearms. In its order, the circuit court determined law enforcement had reason to believe Nation was inside the shed based on the anonymous tip and Detective Teater's prior knowledge that Nation occasionally stayed inside the shed. Further, it determined the police lawfully entered the shed and seized the shotgun pursuant to the "plain-view exception" to the warrant requirement. Apparently affording greater weight to Detective Teater's testimony, the circuit court found law

enforcement did not need to pry the shed open to see inside. Additionally, it determined officer safety provided an additional basis for the warrantless entry due to the unsecured shotgun.

Nation entered a conditional guilty plea to two counts of possession of a firearm by a convicted felon, reserving his right to appeal the circuit court's denial of his motion to suppress. Nation now so appeals.

## STANDARD OF REVIEW

Appellate analysis of a motion to suppress requires application of a bifurcated standard of review. *Pitcock v. Commonwealth*, 295 S.W.3d 130, 132 (Ky. App. 2009). "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law." *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006) (citing *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)). Clear error only exists if the record lacks substantial evidence to support the trial court's findings. *Elsea v. Day*, 448 S.W.3d 259, 263 (Ky. App. 2014) (citing *M.P.S. v. Cabinet for Human Res.*, 979 S.W.2d 114, 116 (Ky. App. 1998)). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chem. Co.*, 474 S.W.2d 367, 369 (Ky. 1971) (citing *O'Nan v. Ecklar Moore Express, Inc.*, 339 S.W.2d 466 (Ky. 1960)).

## ANALYSIS

Both the Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution safeguard individuals against the government's unreasonable searches and seizures. *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011). However, the Supreme Court of Kentucky "has held time and again that 'Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment.'" *Hunter v. Commonwealth*, 587 S.W.3d 298, 305 (Ky. 2019) (quoting *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky. 1996), *overruled on other grounds by Rose v. Commonwealth*, 322 S.W.3d 76 (Ky. 2010)).

Nation argues that the NCSO lacked probable cause for officers to enter the property and arrest him. However, probable cause is not what is required for police to enter property when executing a valid arrest warrant. In *Barrett v. Commonwealth*, the police received an anonymous tip as to Barrett's current whereabouts. 470 S.W.3d 337, 339 (Ky. 2015). The location was an address where Barrett was reportedly the homeowner, and his most recent contact with the police occurred there. *Id*. The police arrived and walked around the home and heard voices and other noises inside. *Id*. at 340. Officers knocked on the door, which caused the voices to stop. *Id*. An officer then used his flashlight to knock

on the door, and the additional force caused the door to open without manipulating the door handle or lock. *Id.*

Based on a concern that a crime was being committed inside the house, the officers announced their presence and entered after receiving no response. *Id*. They found Barrett hiding in an upstairs closet. *Id*. While searching for Barrett, the officers observed drug paraphernalia in plain view, as well as a substance which was later confirmed to be heroin. *Id*. Barrett was indicted for first-degree possession of a controlled substance. *Id*. The circuit court denied his motion to suppress, and he entered a conditional guilty plea. *Id.*

Both this Court and the Supreme Court affirmed, disagreeing with Barrett's argument that the entry into his home by the police was unlawful. *Id*. at 341. The Supreme Court noted "'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Id*. (quoting *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972)). However, the preexistence of an arrest warrant carries with it different considerations than warrantless entries and arrests. To determine whether law enforcement may constitutionally enter a dwelling to effectuate an arrest pursuant to a warrant, the Kentucky Supreme Court in *Barrett* applied the "*Payton* Rule": "'for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a

dwelling in which the suspect lives when there is *reason to believe* the suspect is within.'" *Id.* (emphasis added) (quoting *Payton v. New York*, 445 U.S. 573, 603, 100 S. Ct. 1371, 1388, 63 L. Ed. 2d 639 (1980)).

As to what "reason to believe" means in this context, the Kentucky Supreme Court determined it to constitute something less than probable cause:

> [W]e expressly adopt the plain language reason to believe standard from *Payton* and reject the probable cause standard. Thus, police executing a valid arrest warrant may lawfully enter a residence if they have reason to believe that the suspect lives there and is presently inside. Reason to believe is established by looking at common sense factors and evaluating the totality of the circumstances and requires less proof than does the probable cause standard.

*Id.* at 342 (citing *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir. 2006)). "Common sense factors" and the totality of the circumstances – the anonymous caller stated he was presently at the house, that Barrett's last contact with the police was there, and that Barrett was reportedly the homeowner, as well as the voices and noises coming from inside – caused law enforcement to have reason to believe Barrett was currently inside the house. *Id.* at 343. The Supreme Court determined police entry into the home was constitutional. *Id.*

Further, the entry onto the curtilage of a home is an invasion of privacy less severe than entry into a home itself and, therefore, law enforcement may enter the curtilage of a home to execute a valid arrest warrant. In *McCloud v.*

*Commonwealth*, officers arrived at McCloud's residence to serve an arrest warrant upon her; one officer approached the rear of the mobile home and observed, in plain view, items used to manufacture methamphetamine. 279 S.W.3d 162, 164 (Ky. App. 2007). McCloud answered the front door and was arrested, and officers later uncovered drugs and paraphernalia inside the home pursuant to a warrant. *Id.*

In her motion to suppress, McCloud argued the police "unlawfully proceeded to the rear of the trailer when executing the arrest warrant and improperly invaded the curtilage of her private residence." *Id.* at 166. However, a panel of this Court noted that because police could enter an arrestee's home to effectuate an arrest warrant – the same principle applied in *Barrett* – it concluded "a valid arrest warrant also authorizes the police to enter that part of the curtilage of a private residence necessary to secure the rear door of the residence." *Id.* (citations omitted).

Applying the *Payton* Rule to the entry of law enforcement onto Vicencio's property to approach the shed, we determine common sense factors and the totality of the circumstances demonstrate law enforcement had reason to believe Nation was located on the property inside the shed. An anonymous tip placed Nation inside the shed. Prior interactions and calls also connected Nation to his mother's home. And, as *McCloud* demonstrates, entry into the curtilage of a home is a less serious invasion of privacy than entry into an actual dwelling, which

-8-

law enforcement is authorized to do pursuant to an arrest warrant. As in *McCloud*, where this Court noted police could enter the curtilage of a home as necessary to effectuate a warrant by securing the rear of a home, police here were authorized to enter the curtilage of Vicencio's property and approach the shed.

After lawfully entering the property to execute Nation's arrest warrant, officers were authorized to seize, without a warrant, the firearms located inside the shed. They were able to do so for two reasons. First, the firearms were in the officers' plain view inside the shed, both before and after Nation exited the shed. Second, officers were entitled to perform a protective sweep of the shed to ensure their own safety.

The plain view exception and the protective sweep exception are "well-established exceptions to the warrant requirement." *Pace v. Commonwealth*, 529 S.W.3d 747, 753 (Ky. 2017) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) and *Maryland v. Buie*, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990)). Three elements must be satisfied before evidence seized under the plain view exception is admissible:

> First, the law enforcement officer must not have violated the Fourteenth Amendment in arriving at the place where the evidence could be plainly viewed. Second, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must have a lawful right of access to the object itself." Finally, the object's "incriminating character must also be 'immediately apparent.'"

*Hazel v. Commonwealth*, 833 S.W.2d 831, 833 (Ky. 1992) (citations omitted).

Each of these elements is met here. Based on our preceding determination that law enforcement lawfully entered the property to execute Nation's arrest and were justified in entering the shed for their own safety, as discussed *infra*, the first and second elements are met. And, because the officers were aware of Nation's status as a convicted felon, the shotgun within reach of Nation was of an incriminating character which was immediately apparent.

Under the protective sweep exception, law enforcement may perform a protective sweep in two situations following an in-home arrest. *Pace*, 529 S.W.3d at 754 (citing *Buie*, 494 U.S. at 333-35, 110 S. Ct. 1093; *Guzman v. Commonwealth*, 375 S.W.3d 805, 808 (Ky. 2012)). Under the first, law enforcement may, "as a precautionary matter and without probable cause or reasonable suspicion, . . . look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Kerr v. Commonwealth*, 400 S.W.3d 250, 266 (Ky. 2013) (quoting *Buie*, 494 U.S. at 334, 110 S. Ct. 1093). Under the second, police may conduct "a broader search" if articulable facts would support "'a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" *Id.* "The exigency in these situations is the safety of the officers." *Pace*, 529 S.W.3d at 754 (citing *Guzman*, 375 S.W.3d at 807).

Both these situations are present in this case. Though two others exited the shed with Nation, Detective Teater testified he was unsure whether others were still inside. The shotgun was in the open and could have been readily accessed by a person who remained inside, and so it was reasonable to believe the shed could have still harbored someone who posed a danger to the officers.

In conclusion, because a warrant for Nation's arrest was outstanding, officers were not required to have probable cause to enter the property to execute the warrant. What was required, however, was that the officers had a reason to believe Nation was located there. The officers had the necessary reason and, upon observing the shotgun inside, lawfully seized it without a warrant.

## **CONCLUSION**

Based on the foregoing, we affirm the circuit court's denial of Nation's suppression motion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky